CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
FEB 02 2011
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ANN KARIMA GALLANT, | ) |
| Plaintiff, | ) Civil Action No. 3:10CV00006 |
| v. | ) **MEMORANDUM OPINION** |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, | ) By: Hon. Glen E. Conrad<br>) Chief United States District Judge |
| Defendant. | ) |

The plaintiff, Ann Karima Gallant, proceeding pro se, filed this action against the defendant, Deutsche Bank National Trust Company ("Deutsche Bank"). The case is presently before the court on the defendant's motion to dismiss. For the reasons that follow, the court will grant the defendant's motion.

## Background

This action arises from foreclosure proceedings initiated against the plaintiff's property by the defendant. The plaintiff purchased the property located at 111 Piedmont Avenue South in Charlottesville, Virginia on March 3, 2006. To effectuate the purchase, the plaintiff executed a promissory note and a deed of trust, the latter of which granted a security interest in the property to the plaintiff's original lender, Option One Mortgage Corporation.

The promissory note was assigned to the defendant, Deutsche Bank. At some point thereafter, the plaintiff apparently became delinquent in her mortgage payments. In March of 2008, Deutsche Bank initiated foreclosure proceedings against the property, and a trustee's sale was held on April 15, 2008. The plaintiff subsequently failed to vacate the property, prompting

the defendant to file an unlawful detainer action against the plaintiff in the General District Court for the City of Charlottesville.

The plaintiff filed the instant "quiet title action for injunctive and declaratory relief" on February 9, 2010. (Compl. at page 1). Liberally construed, the plaintiff's complaint asserts the following claims:

1. The plaintiff alleges that the foreclosure sale was improper because:

    a. The substitute trustee failed to provide requisite notice to the plaintiff;

    b. The substitute trustee failed to produce the original promissory note;

    c. The original lender, Option One Mortgage Corporation, failed to provide proof of assignment to the plaintiff; and

    d. Deutsche Bank failed to show the plaintiff that it is a holder in due course.

2. The plaintiff alleges that Deutsche Bank is precluded from enforcing the plaintiff's mortgage loan and deed of trust under the "vapor money," "unlawful money," and "ultra vires" theories.

3. The plaintiff alleges that Deutsche Bank violated the Racketeer Influenced and Corrupt Organizations Act ("RICO").

4. The plaintiff alleges that a conflict of interest arose from the fact that Howard N. Bierman acted as substitute trustee and later filed an unlawful detainer action against the plaintiff on behalf of Deutsche Bank.

After the complaint was filed, the plaintiff moved for entry of default against Deutsche Bank. The court denied the plaintiff's motion on April 16, 2010. The plaintiff then filed an

interlocutory appeal to the United States Court of Appeals for the Fourth Circuit, which was dismissed for lack of jurisdiction on December 3, 2010.

The case is presently before the court on the defendant's motion to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. By order entered December 7, 2010, the court scheduled the motion for a hearing on January 21, 2011, and gave the plaintiff until January 3, 2011 to file a response to the motion. On January 3, 2011, the plaintiff filed a motion for extension of time, in which she asserted that she was attempting to retain counsel to assist her in responding to the motion to dismiss. By order entered January 5, 2011, the plaintiff was granted a fourteen-day extension to retain counsel. The plaintiff was advised that if no notice of appearance was filed within the fourteen-day period, the court would proceed with the hearing on the defendant's motion. After receiving no further submissions from the plaintiff, the court proceeded with the January 21, 2011 hearing as scheduled. The plaintiff failed to appear for the hearing or otherwise respond to the defendant's motion to dismiss.[1] The motion is ripe for review.

## Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When deciding a motion under this rule, the court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, to survive a Rule 12(b)(6)

---

[1] The hearing on the defendant's motion was scheduled to begin at 10:30 a.m. on January 21, 2011. When the plaintiff failed to appear at the scheduled hearing time, the deputy clerk contacted the plaintiff. The plaintiff advised the deputy clerk that she would not be attending the hearing.

motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

In considering a motion to dismiss under Rule 12(b)(6), the court may "consider the complaint itself and any documents that are attached to it." CACI Intl'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009). The court may also consider a document submitted by the defendant if such document "was integral to and explicitly relied on in the complaint and if the plaintiff[] do[es] not challenge its authenticity." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (internal citation omitted).

## Discussion

I.  Request for Declaratory Relief

To the extent the plaintiff seeks a declaration regarding the validity of the foreclosure sale, the court agrees with the defendant that such relief is inappropriate in this case. "[D]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation." Tapia v. United States Bank, N.A., 718 F. Supp. 2d 689, 695 (E.D. Va. 2010) (internal citation omitted). Such relief "is unavailable in situations where . . . 'claims

4

and rights asserted have fully matured, and the alleged wrongs have already been suffered.'" Trull v. Smolka, 2008 U.S. Dist. LEXIS 70233, at *24 (E.D. Va. Sept. 18, 2008) (quoting Bd. of Supervisors v. Hylton Enters., 221 S.E.2d 534, 537 (Va. 1976)).

In this case, the foreclosure sale was conducted in April of 2008. Consequently, because "the alleged wrong or questionable conduct has already occurred (the foreclosure), . . . declaratory relief is inappropriate." Ramirez-Alvarez v. Aurora Loan Servs., LLC, 2010 U.S. Dist. LEXIS 116995, at *6 (E.D. Va. July 21, 2010).

II. Quiet Title Claim

The court likewise agrees with the defendant that the plaintiff's quiet title claim is subject to dismissal, since the complaint contains no facts supporting the plaintiff's claim of superior title. "An action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." Maine v. Adams, 672 S.E.2d 862, 866 (Va. 2009). A party asserting a quiet title claim must plead and prove that she has superior title to the property. See Id.

In this case, the plaintiff's quiet title claim is asserted in a wholly conclusory fashion. Because the complaint contains no allegations which plausibly suggest that the defendant has no rightful claim to the property at issue or that the plaintiff has superior title to the property, the court will grant the defendant's motion with respect to this claim.

III. Claims of Inadequate Notice

The plaintiff next claims that the defendant failed to provide requisite notice of the foreclosure sale. Specifically, the plaintiff alleges that she only learned of the April 15, 2008 foreclosure sale on April 11, 2008, when she received the notice of sale via certified mail. To the

5

extent the plaintiff argues that Virginia law mandates that a property owner receive notice of the foreclosure sale at least fourteen days prior to the sale, the plaintiff's argument is without merit. Section 55-59.1(A) of the Virginia Code states that the "[m]ailing of a copy of the advertisement or a notice containing the same information to the owner by certified or registered mail no less than 14 days prior to such sale . . . shall be a sufficient compliance with the requirements of notice." Va. Code § 55-59.1(A). In this case, there is no allegation that the notice was mailed less than fourteen days prior to the foreclosure sale. To the contrary, the notice of sale indicates that it was mailed to the plaintiff on March 27, 2008, more than fourteen days prior to the April 15, 2008 foreclosure sale.

In any event, even if the notice was not timely mailed, the plaintiff would not be entitled to relief. Section 55-59.1(A) expressly states that the "failure to give notice as required by this subsection shall not impose liability on either the trustee or the secured party." Va. Code § 55-59.1(A). Likewise, subsection (C) of § 55-59.1 provides that "failure to comply with the requirements of notice contained in this section shall not affect the validity of the sale." Va. Code § 55-59.1(C); see also SunTrust Bank v. Wright, 63 Va. Cir. 396, 398 (Va. Cir. Ct. 2003) ("The [Virginia] Supreme Court has made it clear that section 55-59.1 does not require notice to be perfect. Failure of notice alone will not serve to invalidate the foreclosure sale.").

The plaintiff also claims that the notice advertising the foreclosure sale was insufficient because it was not published in the local newspaper at least fourteen days prior to the sale. As Deutsche Bank emphasizes, however, neither the Virginia Code nor the deed of trust contains such requirement. The deed of trust states that the substitute trustee "shall give public notice of sale by advertising . . . once a week for two successive weeks." (Deed of Trust at para. 21).

Virginia Code § 55-59.2 defers to the deed of trust with respect to the number of advertisements, but requires that the foreclosure sale "be held on any day following the day of the last advertisement which is no earlier than eight days following the first advertisement nor more than thirty days following the last advertisement." Va. Code § 55-59.2(A)(1).

In this case, an exhibit to the plaintiff's complaint confirms that the notice of sale was published once a week for two successive weeks as required by the deed of trust, specifically on April 2, 2008 and April 9, 2008. The foreclosure sale was then held on April 15, 2008, more than eight days following the first advertisement and less than thirty days following the last advertisement, as required by Virginia Code § 55-59.2(A)(1). Accordingly, the plaintiff's claims of improper notice are without merit, and the court will grant the defendant's motion to dismiss with respect to these claims.

IV. "Show Me the Note" Claims

The plaintiff next alleges that Deutsche Bank "failed to provide proof or possession of the original note" and, thus, is unable "to show legal, lawful or proper standing as holder in due course as required by law to proceed with any claim." (Compl. at para. 23, 43). The plaintiff appears to suggest that Deutsche Bank had no authority to foreclose on her home because the bank was not in possession of the original promissory note. This theory, which is often referred to as the "show me the note" theory, began circulating through courts across the country in 2009. See Stein v. Chase Home Fin., LLC, 2010 U.S. Dist. LEXIS 121131, at *9 (D. Minn. Aug. 13, 2010) (citing cases). "Advocates of this theory believe that only the holder of an original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." Id. (internal citation omitted).

7

As Deutsche Bank emphasizes in its brief in support of the motion to dismiss, courts have routinely rejected the "show me the note" theory on the ground that foreclosure statutes simply do not require production of the original note. Id.; see also Diessner v. Mortgage Elec. Registration Sys., 618 F. Supp. 2d 1184, 1187 (D. Ariz. 2009) ("[D]istrict courts have routinely held that [the] 'show me the note' argument lacks merit.") (collecting cases). The theory advanced by the plaintiff fares no better under Virginia law. Section 55-59.1 of the Virginia Code specifically states that:

> If a note or other evidence of indebtedness secured by a deed of trust is lost or for any reason cannot be produced . . . , the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice.

Va. Code § 55-59.1(B). Accordingly, the defendant's inability to produce the original note did not render the foreclosure sale invalid, and the plaintiff's claim to the contrary must be dismissed.[2]

Along the same lines, the court must reject the plaintiff's claim that a secured party is required to come to a court of law and prove its authority or standing to foreclose on the secured property. As the defendant emphasizes, such claim "is contrary to Virginia's non-judicial foreclosure laws." Zambrano v. HSBC Bank USA, Inc., 2010 U.S. Dist. LEXIS 51371, at *16

---

[2] It is clear from the plaintiff's own submissions that she received adequate notice of the fact that the original promissory note could not be produced. With her complaint, the plaintiff submitted a copy of the letter notifying her that the original note could not be produced by the defendant, and that the defendant nonetheless intended to initiate foreclosure proceedings against the plaintiff, as required by Virginia Code § 55-59.1(B).

(E.D. Va. May 25, 2010). "Sections 55-59.1 through 55-59.4 [of the Virginia Code], which set forth the procedural requirements for a non-judicial foreclosure, do not require an interested party to prove 'standing' in a court of law before initiating the foreclosure process." Tapia, 718 F. Supp. 2d at 698.

The court must also reject the plaintiff's argument that Deutsche Bank "lacks legal or lawful standing" because the original lender, Option One Mortgage Corporation, "failed to provide legal or lawful proof of assignment to [the plaintiff]." (Compl. at para. 20). By signing the deed of trust, the plaintiff specifically acknowledged that "[t]he Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower." (Deed of Trust at para. 19). Given such an agreement, the note was freely transferable without prior notice under Virginia law, and the plaintiff's claim to the contrary is without merit. See, e.g., Daugherty v. Diment, 385 S.E.2d 572, 574-575 (Va. 1989) (noting that the assignor was free to make an assignment without "the consent of anyone" where the subject contract included a clause specifying free assignability).

V.     "Vapor Money," "Unlawful Money, and "Ultra Vires" Claims

Many of the allegations asserted in the plaintiff's complaint are premised on legal theories commonly referred to as the "vapor money," "unlawful money," and "ultra vires" theories. The "vapor money" theory was described by the United States District Court for the Southern District of Ohio in Demmler v. Bank One NA, 2006 U.S. Dist. LEXIS 9409, at *3-4 (S.D. Ohio Mar. 9, 2006):

> Plaintiff alleges that the promissory note he executed is the equivalent of "money" that he gave to the bank. He contends that [the lender] took his "money," i.e., the promissory note, deposited it into its own account

> without his permission, listed it as an "asset" on its ledger entries, and then essentially lent his own money back to him. He contends that [the lender] . . . "created" the money through its bookkeeping procedures.

Demmler, 2006 U.S. Dist. LEXIS 9409 at *3-4. Under the "unlawful money" theory, which is slightly different, the issuance of "credit" is said to violate Article I, Section 10 of the United States Constitution, since that provision "purportedly 'requires a state to accept and recognize only gold and silver coin as legal tender.'" Buckley v. Bayrock Mortg. Corp., 2010 U.S. Dist. LEXIS 10636, at *28-29 (N.D. Ga. Jan. 12, 2010) (quoting Rudd v. Keybank, N.A., 2006 U.S. Dist. LEXIS 5357, at *5 (S.D. Ohio Jan. 25, 2006)). Under the "ultra vires" theory, another offshoot of the "vapor money" theory, the plaintiff alleges that the defendant exceeded the limits of its legal authority as a corporation by creating money from the plaintiff's promissory note. See, e.g., Johnson v. Deutsche Bank Nat'l Trust Co., 2009 U.S. Dist. LEXIS 84092, at *7-8 (S.D. Fla. June 30, 2009).

As Deutsche Bank emphasizes in its brief in support of the motion to dismiss, "courts have uniformly rejected these and similar arguments." Buckley, 2010 U.S. Dist. LEXIS 10636, at *29; see also McLehan v. Mortgage Elec. Registration Sys., 2009 U.S. Dist. LEXIS 46280, at *5 (E.D. Mich. June 2, 2009) ("The vapor money theory . . . and 'similar arguments have been rejected by federal courts across the country.'") (quoting Demmler, 2006 U.S. Dist. LEXIS 9409 at *11); Barber v. Countrywide Home Loans, Inc., 2009 U.S. Dist. LEXIS 123939, at *10-11 (W.D. N.C. Oct. 8, 2009) (agreeing with other courts that claims based on the vapor money and unlawful money theories are "utterly frivolous" and "patently ludicrous") (internal citations omitted); Johnson, 2009 U.S. Dist. LEXIS 84092, at *7-8 (summarily dismissing the plaintiff's ultra vires claim). This court likewise concludes that to the extent the plaintiff's complaint is

based on the vapor money, unlawful money, and ultra vires theories, the complaint fails to state a cognizable claim against the defendant and is subject to dismissal.

VI. RICO Claim

Paragraph 39 of the plaintiff's complaint references the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. To the extent the plaintiff seeks to assert a cause of action under RICO, the court agrees with the defendant that the plaintiff's factual allegations are insufficient to withstand its motion to dismiss. In order for a RICO claim to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). A plaintiff must also show that she was injured in her property or business as a result of the RICO violations. See Field v. GMAC LLC, 660 F. Supp. 2d 679, 686 (E.D. Va. 2008). The foregoing elements "are common to claims of violations of all four subsections of 18 U.S.C. § 1962," and the "injury and causation components are viewed as standing requirements." Id.

Having thoroughly reviewed the plaintiff's complaint, the court agrees with Deutsche Bank that the plaintiff's allegations are insufficient to state a RICO claim against the defendant. The plaintiff's claim is premised on the single, conclusory assertion that she "believe[s] that this activity [referring to her vapor money, unlawful money, and ultra vires theories] has occurred through communications across state lines and [she] believe[s] it falls under RICO statute violations as a result." (Compl. at para. 39). Her complaint contains no additional factual allegations that support the existence of a RICO enterprise or a pattern of racketeering, or otherwise "plausibly suggest an entitlement to relief" under RICO. Iqbal, 129 S. Ct. at 1951.

Because Twombly and Iqbal make clear that "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient to withstand a motion to dismiss, the court will grant Deutsche Bank's motion with respect to this claim. See Id. at 1949 (quoting Twombly, 550 U.S. at 557).

VII. Conflict of Interest Claim

In her final claim, the plaintiff alleges that Howard N. Bierman, who is not a party to this action, "act[ed] in a clear conflict of interest" because he served as the substitute trustee and, subsequent to the foreclosure sale, filed an unlawful detainer action against the plaintiff on behalf of Deutsche Bank. (Compl. at para. 13). Under Virginia law, however, a trustee under a deed of trust "only owes those duties that are listed in the deed of trust itself." Carter v. Countrywide Home Loans, Inc., 2008 U.S. Dist. LEXIS 67014, at *30 (E.D. Va. Sept. 3, 2008); see also Fleet Finance v. Burke & Herbert Bank & Trust, 27 Va. Cir. 98, 101 (Va. Cir. Ct. 1992) ("The Court finds on this issue that Virginia law does not impose fiduciary duties on trustees beyond those duties owed to the parties under the deed of trust."). The plaintiff does not allege that the deed of trust imposes a duty to refrain from filing an unlawful detainer action against the borrower following a foreclosure sale, and a review of the deed of trust reveals that it, in fact, does not impose such duty. Accordingly, the plaintiff's conflict of interest claim is also subject to dismissal.

**Conclusion**

For the reasons stated, the court will grant the defendant's Rule 12(b)(6) motion to dismiss. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

ENTER: This 2ᵈ day of February, 2011.

_____
Chief United States District Judge